UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE MCKENZIE,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:16-cv-00976-CKD<br><br>ORDER |

Plaintiff Michelle Rene McKenzie seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1] In her motion for summary judgment, plaintiff principally argues that the decision of the administrative law judge ("ALJ") is based upon legal error and is not supported by substantial evidence in the record. (See ECF No. 18.) The Commissioner opposed plaintiff's motion and filed a cross-motion for summary judgment. (ECF No. 22.) Thereafter, plaintiff filed a reply brief. (ECF No. 23.)

After carefully considering the record and the parties' briefing, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15).

1

summary judgment, and AFFIRMS the Commissioner's final decision.

I.      BACKGROUND

Plaintiff was born on September 5, 1973, graduated from high school, and attended college for two years.[2] (Administrative Transcript ("AT") 41, 179, 475.) On August 2, 2012, plaintiff applied for DIB, alleging that her disability began on June 31, 2011. (AT 110, 179.) Plaintiff claimed that she was disabled due to ADHD, bipolar disorder, migraines, back pain, bulging disk, arthritis in the back, and allergies. (AT 213.) After plaintiff's application was denied initially and on reconsideration, an ALJ conducted a hearing on July 8, 2014. (AT 35–71.) The ALJ subsequently issued a decision dated October 7, 2014, determining that plaintiff had not been under a disability as defined in the Act, from July 31, 2011, through the date of the ALJ's decision. (AT 110–125.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on March 2, 2016. (AT 1–4.) Plaintiff subsequently filed this action on May 6, 2016, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II.      ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ improperly rejected two medical opinions; (2) whether the ALJ erred by failing to find that plaintiff had a severe wrist or hand impairment at step two; (3) whether the ALJ improperly discounted lay testimony; and (4) whether the ALJ's RFC was without substantial evidence support.[3]

III.      LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[3] Plaintiff's opening brief raises the issues in a somewhat different order.

evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

"[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196 (1947). At the same time, in the context of Social Security appeals, "[a]s a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion. It is proper for us to read the paragraph . . . and opinion, and draw inferences . . . if those inferences are there to be drawn." Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989).

IV. DISCUSSION

    A. Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB pursuant to the Commissioner's standard five-step analytical framework.[4] Preliminarily, the ALJ determined that plaintiff meets the

---

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

    Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

    Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

insured status requirements of the Act through December 31, 2016.  (AT 112.)  At step one, the ALJ concluded that plaintiff has not engaged in substantial gainful activity since July 31, 2011, the alleged onset date.  (Id.)  At step two, the ALJ found that plaintiff had "the following severe impairments:  degenerative disc disease of the cervical, thoracic and lumbar spine, with Chiari Malformation Type I[5]; osteoarthritis of the knees; bipolar disorder; [and] polysubstance dependence in remission."  (Id.)  However, at step three the ALJ concluded that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1."  (AT 115.)

Before proceeding to step four, the ALJ assessed plaintiff's RFC, finding that plaintiff could perform light work as defined in 20 C.F.R. § 416.967(b), except that she can:

> lift and carry twenty pounds occasionally and ten pounds frequently; can sit for eight hours of an eight hour day with normal breaks, and needs to change position at will not leaving the workstation so she can sit for 30-40 minutes at a time; can stand and walk for six hours of an eight hour work day with normal breaks; cannot climb ladders, ropes or scaffolds; and can occasionally stoop, crawl, crouch and kneel.  She can receive, remember, understand, and carry out simple job instructions; can receive, remember, understand, and carry out occasionally complex, and frequently detailed job instructions; can occasionally interact with the general public and frequently interact with co-workers and supervisors.  She is able to make simple workplace adjustments, and judgments.

(AT 117.)

---

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled.  If not, proceed to step four.

Step four:  Is the claimant capable of performing her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

[5] Protrusion of brain tissue into the spinal canal.  (AT 636.)

At step four, the ALJ determined that plaintiff is unable to perform any past relevant work. (AT 123.) However, at step five, the ALJ found that, in light of plaintiff's age, education, work experience, RFC, and the vocational expert's testimony, there were jobs that existed in significant numbers in the national economy that plaintiff could have performed. (Id.) Thus, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from July 31, 2011 through October 7, 2014. (AT 125.)

    B.    <u>Plaintiff's Substantive Challenges to the Commissioner's Determinations</u>

        1.    *Whether the ALJ improperly rejected two medical opinions*

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for rejecting the opinions of plaintiff's primary care physician Craig Ruggles, MD and treating psychiatrist, David Sisemore, D.O. (See ECF No. 18 at 13–18). Plaintiff asserts that the ALJ's reasons were impermissibly broad, and based upon his lay interpretation of the evidence, rather than substantial evidence. (Id.)

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1201-02 (9th Cir. 2001); <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. <u>Holohan</u>, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. <u>Lester</u>, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. <u>Id.</u> at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing <u>Magallanes</u>

v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[6] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

Here, the opinions of Drs. Ruggles and Sisemore were contradicted by the opinions of consulting examiner Dr. Chiong and state agency reviewers Drs. Sheehy and Mateus, which the ALJ gave great weight.  (See AT 101–05, 120–21, 481–88.)  As such, the ALJ was required to provide specific and legitimate reasons to reject the opinions of Drs. Ruggles and Sisemore.

The ALJ met this burden.  First, he summarized the opinion of each doctor.  (AT 122.) Dr. Ruggles had opined that plaintiff was severely limited in her ability to sit, stand, and use her hands, due to bilateral carpal tunnel syndrome, bilateral keen pain, and lower back pain.  (AT 122, 553.)  Dr. Sisemore had opined that plaintiff was severely limited in her ability to perform work related functions due to her mental impairments, and that she had a chronic lifetime disability.  (AT 122, 552.)

Next, the ALJ explained:

> Generally controlling weight is given the opinions of treating sources where well-supported, and not inconsistent with the substantial evidence of record. . . .  However, as reviewed above, the record overall evidencing mental and physical findings within normal limits, with limited findings of abnormalities in these, and diagnostic testing and medical imagery, the good response to treatment, and the claimant's capacity to engage in a rather ordinary range of activities of daily living and social functioning leads the undersigned to accord little weight to these opinions.

(AT 122.)  The ALJ clearly found that the opinions of Drs. Ruggles and Sisemore were inconsistent with the substantial evidence of record.  Moreover, the ALJ's findings here were not

---

[6] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization.  20 C.F.R. § 404.1527.

6

impermissibly broad. The ALJ explicitly incorporated his prior findings, regarding what the record reveals as to plaintiff's impairments, which are supported by substantial evidence. (See AT 112–22.)

### i. **Mental and physical findings within normal limits**

In rejecting these opinions, the ALJ pointed to inconsistencies between the severe limitations that were opined and the objective findings in the medical records. The ALJ reviewed plaintiff's imaging studies from 2011 through 2014 and concluded "[t]he record contains multiple x-rays and MRIs which generally show a range of at most minimal to moderate degenerative changes to the cervical, thoracic, lumbar spine, and knees." (AT 113.) This conclusion is supported by substantial evidence in the record, which the ALJ considered in detail. (See AT 113, 372, 518, 534, 608, 612, 621–35.)

Regarding plaintiff's back and lower extremities, the ALJ also concluded that "[p]hysical exam findings are generally within normal limits—there is no tenderness, range of motion is intact, straight leg raise is negative, reflexes are intact and gait is intact." (AT 119.) All of these findings are supported by objective findings in the medical record. (See 522, 537, 616–18, 655.) Moreover, the ALJ pointed out that plaintiff's spinal condition "Chiari Malformation Type I is asymptomatic and she has no current issues regarding this" (AT 199), which is also supported by the record. (See AT 536, 623.) The ALJ additionally observed that while plaintiff did present with more serious back conditions, directly after her motor vehicle accident in July of 2011, the medical records show that her conditions have largely resolved. (AT 119.) This too is supported by the medical evidence. (Compare AT 366–71, 376 with AT 522, 537, 616–18, 655.)

As to plaintiff's alleged carpal tunnel syndrome, the ALJ observed that "[t]here is no significant evidence of treatment for carpal tunnel syndrome or left trigger thumb in this record" and that physical exam findings in the record "demonstrated limited findings of abnormalities." (AT 114.) The record supports this conclusion. In May of 2012, orthopedic consultant, Dr. Scott examined plaintiff and observed good range of motion in both wrists and all digits; little tender nodularity down at the base of the left thumb; no evidence of triggering in the left thumb; no triggering or pain with motion in any of the other digits; good radial pulse bilaterally; gross intact

motor and sensory function; Tinel's sign positive; somewhat positive Phalen's test. (AT 616.)

Regarding plaintiff's mental impairments, the ALJ also relied upon substantial evidence in the record, inconsistent with the extreme limitations opined by Dr. Sisemore. (See AT 119–20.) Specifically, he pointed out that plaintiff's mental status examinations were generally within normal limits and the only recurrent abnormal symptoms were dysphoria, depression, and anxiety. (See AT 385–411, 467–75, 503–08, 604–06.)

ii. **Good response to treatment**

The ALJ also observed that plaintiff's physical and mental conditions were well controlled by medication and conservative treatment. Regarding her physical conditions, the ALJ concluded "[c]onservative treatment with non-opiates, given her history of substance dependency, well controls her pain symptoms and the reports of her activities of daily living supports this finding. She reports to treating sources that she walks frequently; has no limitations on mobility." (AT 119.) This is supported by treatment notes in the record. (AT 536.) Furthermore, plaintiff testified that she only takes non-narcotic pain medication (AT 55), and that she received relief from cortisone injections for trigger thumb pain (AT 64).

Regarding her mental conditions, the ALJ found that "[w]hile her financial, workplace or relationship circumstances wax and wane causing more stress, depressive or anxious mood, overall she reports she is doing well on medications and/or stable frequently . . . [and] [s]he reports no side effects." (AT 120.) These findings are supported by the medical record. (See AT 386–87, 410, 467, 472–74, 505, 536, 604.) Moreover, the ALJ pointed out that plaintiff reported that Adderall was helpful in improving her focus and concentration. (See AT 120, 468–69, 503.)

iii. **Daily activities**

The ALJ also determined that plaintiff's reported daily activities were inconsistent with the severe limitations opined by Drs. Ruggles and Sisemore. (AT 122.) In particular,

> She is substantially independent in self-care, does light housework including cooking, dishes, cleaning bathrooms and laundry all of which take longer due to her impairments. She lives in a two story home and goes up and down the stairs. She drives, takes her sons to school, shops and can walk for ten minutes. She cares for and plays with a dog, some snakes and a bearded dragon.

8

(AT 116.)  These activities were reported by plaintiff through testimony, function reports, and examining physicians' notes.  (See AT 53–59, 248–57, 285–89, 482–83.)  The ALJ also pointed to plaintiff's reported social functioning (AT 116):  taking care of her grandchild; attending 12 step meetings and church; talking with others; interacting with family regularly; and getting along with authority figures.  (See AT 53–59, 248–57, 285–89, 471, 482–83.)  Therefore, the court finds that the ALJ provided several specific and legitimate reasons for discounting the opinions of Drs. Ruggles and Sisemore.

        2.      *Whether the ALJ erred by failing to find that plaintiff had a severe wrist or hand impairment at step two*

According to plaintiff, "[t]he ALJ's rejection of Dr. Ruggles' opinion included a rejection of the significant manipulative limitations Dr. Ruggles opined, i.e., no grasping and very little reaching or handling. This rejection was [allegedly] a product of the ALJ's erroneous finding at step two that Plaintiff did not have a severe wrist or hand impairment." (ECF No. 18 at 16.)

Under the Commissioner's regulations, an impairment or combination of impairments is deemed to be severe at step two if it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521(a).  As the Ninth Circuit Court of Appeals has explained, "the step-two inquiry is a de minimis screening device to dispose of groundless claims.  An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal citations and quotation marks omitted).

The ALJ provided specific and legitimate reasons for rejecting Dr. Ruggles' opinion, as explained.  What is more, the ALJ thoroughly considered plaintiff's alleged wrist and hand impairments at step two, determining that they were not severe.  (See AT 114.)  First, the ALJ looked to the objective medical evidence in the record, finding a lack of significant evidence of treatment for carpal tunnel and trigger thumb, and limited findings of abnormality.  (Id.)  These findings are supported by substantial evidence in the record.  (See AT 616–17.)

/////

Second, the ALJ relied on plaintiff's daily activities to reject her complaints of severe impairment. Importantly, the ALJ pointed out that while she "has reported dropping items and daily hand pain and numbness she still drives, performs rather ordinary range of household work, and can use a phone to handle email, text, and play games." (AT 114.) These activities are supported by plaintiff's own assertions in the record. (See AT 53–59, 248–57, 285–89, 482–83.)

Third, the ALJ observed that "[g]iven the history of the condition since at least 2006, she was able to sustain substantial gainful activity employment despite it and she has not reported or testified to any special working accommodation given for her wrists, hands or thumb." (AT 114.) The record demonstrates that she had a history of carpal tunnel dating to at least 2006 (AT 521), and that she continued to work until July of 2011 (AT 47), with no indication of accommodation for wrist, hand, or thumb pain. Thus, substantial evidence supports the ALJ's determination at step two.

Yet, even assuming, without deciding, that the ALJ technically erred by not finding plaintiff's wrist and hand impairments severe for purposes of step two, such error was harmless. See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on account of an error that is harmless"). Here, because the ALJ found another physical impairment to be severe at step two, he proceeded to subsequent steps of the sequential disability evaluation process. (AT 112.) Then, when crafting plaintiff's RFC, the ALJ considered the effect of all of her alleged limitations, including carpal tunnel syndrome and trigger thumb. (See AT 117–123.) Accordingly, the court finds no prejudicial error at step two.

        3.    *Whether the ALJ improperly discounted lay testimony*

Plaintiff also argues that the ALJ failed to provide clear and convincing reasons for discounting the testimony of plaintiff and her parents. (ECF NO. 18 at 19–20.) In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other

|   |   |
|---|---|
| 1 | symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged. |


1
2
3
4

        symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.

        Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking. . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

        "The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958–59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

        As an initial matter, the court notes that the ALJ did not entirely discredit plaintiff's allegations of limitations due to her physical and mental impairments. Indeed, the ALJ accepted many of plaintiff's allegations and incorporated them into the RFC. (See AT 117, 121.) Nevertheless, to the extent that the ALJ discounted plaintiff's testimony regarding her symptoms and functional limitations, the ALJ provided several specific, clear, and convincing reasons for doing so. As the ALJ found:

        The record supports the claimant's allegations and those of her

> parents, that she has chronic neck, back and knee pain, necessitating medications. She has chronic mental disorder, as well as a history of polysubstance dependence in sustained remission, treated with multiple psychotropic medications as well as treatment by psychiatrists. As well, her allegations are supported by her recurrent complaints of mental and physical symptoms to treating sources.
>
> However, the record overall shows limited findings of objective physical and mental abnormalities upon examination and treatment; diagnostic testing and medical imagery shows only mild to moderate musculoskeletal abnormality; the claimant responds well to conservative treatment with medications enabling her to perform a good range of activities of daily living and function socially; and opinions of record support her capacity to perform a less than full range of light exertional work, that is simple including some degree of detailed and complex tasks, with limitations on interaction with others.
>
> The claimant's allegations, as well as those of h[er] parents, consequently, are not fully sustained by the objective signs and findings in the medical records over all.

(AT 121–122.)

### i. **Objective medical evidence**

"[A]fter a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citing Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)). Although lack of medical evidence cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider. Burch, 400 F.3d at 681. Here, the ALJ relied on the same substantial medical evidence in the record, cited above, that was used to reject the opinions of Drs. Ruggles and Sisemore. Since the ALJ did not solely rely on the inconsistencies between this evidence and plaintiff's subjective complaints, the ALJ did not err.

### ii. **Medical opinions**

The ALJ also appropriately relied on inconsistencies between plaintiff's subjective complaints and the opinions of examining and reviewing physicians. See Thomas, 278 F.3d at 958–59. Specifically, the ALJ relied upon the opinion of consulting examiner Dr. Chiong, as well as the opinions of state agency reviewers Drs. Sheehy and Mateus. (See AT 120–21.) Each of these practitioners found plaintiff to be capable of light work and simple repetitive tasks, with

12

some limitations.  (AT 101–103, 488.)  At the same time, these opinions did not support the more severe impairments of which plaintiff complained.

### iii. Conservative treatment

Plaintiff's relatively conservative treatment was also a proper consideration.  See Tommasetti v. Astrue, 533 F.3d 1035, 1039–40 (9th Cir. 2008) (reasoning that a favorable response to conservative treatment undermines complaints of disabling symptoms); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).  As explained, the ALJ relied on substantial evidence in the record that plaintiff received conservative treatment:  non-opioid medications and cortisone injections for pain (AT 55, 64); Suboxone for polysubstance abuse (AT 465–75); Adderall for concentration (AT 468); and therapy for mental conditions (AT 465–75).

### iv. Condition can be controlled with medication

Additionally, a condition that can be controlled or corrected by medication is not disabling for purposes of determining eligibility for benefits under the Act.  See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006); Montijo v. Sec'y of Health & Human Servs., 729 F.2d 599, 600 (9th Cir. 1984); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983).  Here, the ALJ explicitly pointed out that, regarding her mental impairments, plaintiff reported "she is doing well on medications and/or stable frequently" (AT 120), which is supported by substantial evidence in the record.  (See AT 386–87, 410, 467, 472–74, 505, 536, 604.)

### v. Daily activities

As detailed above, substantial evidence also supports the ALJ's finding that plaintiff's daily activities are inconsistent with his allegations of disabling symptoms and limitations. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. . . . Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."  Molina,

13

674 F.3d at 1112–13 (citations and quotation marks omitted); see also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ properly considered claimant's ability to care for her own needs, cook, clean, shop, interact with her nephew and boyfriend, and manage her finances and those of her nephew in the credibility analysis); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility).

Here, plaintiff is largely independent in self-care; she cooks, cleans, and does laundry; uses her phone to email, text, and plays games; goes up and down the stairs; drives; takes her sons to school; shops; takes care of her grandchild and pets; regularly attends 12-step meetings and church; talks with others; and gets along with authority figures. (See AT 53–59, 248–57, 285–89, 471, 482–83.)

To be sure, the record also contains some contrary evidence—such as plaintiff having a hard time staying on a task and needing extra time to complete activities, such as cleaning—suggesting that plaintiff's activities are more limited. (AT 248–57.) However, it is the function of the ALJ to resolve any ambiguities, and the court finds the ALJ's assessment to be reasonable and supported by substantial evidence. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all of the activities and noting that the ALJ's interpretation "may not be the only reasonable one"). As the Ninth Circuit explained:

> It may well be that a different judge, evaluating the same evidence, would have found [the claimant's] allegations of disabling pain credible. But, as we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact. Credibility determinations are the province of the ALJ. . . . Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.

Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

////

####### vi. Third party testimony

"[C]ompetent lay witness testimony cannot be disregarded without comment" and "in order to discount competent lay witness testimony, the ALJ must give reasons that are germane to each witness." Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (internal quotation and citation omitted). Here, the ALJ summarized the third-party function reports from plaintiff's parents, which essentially echoed plaintiff's own statements and testimony. (See AT 118, 236–244, 270-78.) As discussed, the ALJ provided specific, clear, and convincing reasons for discounting plaintiff's testimony, which are equally germane to the third-party testimony. And, the ALJ explicitly rejected the reports from plaintiff's parents for these same reasons. (See AT 122.) Thus, the ALJ properly discredited the lay testimony in this case.

4. *Whether the ALJ's RFC was without substantial evidence support*

An RFC "is the most [one] can still do despite [his or her] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 404.1545(a)(1). "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545).

For the reasons discussed above, the court finds that the ALJ appropriately evaluated the medical opinion evidence and plaintiff's credibility. As such, plaintiff's argument that the RFC is without substantial evidence support is not well taken. Relatedly, plaintiff challenges the ALJ's decision because he failed to have an expert review additional records that were submitted by plaintiff after the hearing. (ECF NO. 18 at 18–19.) This argument is unpersuasive because, as explained, the ALJ satisfied his obligation to determine plaintiff's RFC, by weighing the record as a whole, resolving any ambiguity, and coming to a decision based upon substantial evidence in the record. See Edlund, 253 F.3d at 1156; Tommasetti, 533 F.3d at 1035.

V. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 18) is DENIED.

2. The Commissioner's cross-motion for summary judgment (ECF No. 22) is

GRANTED.

3. The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner.

4. The Clerk of Court shall close this case.

Dated: September 29, 2017

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

14/ss.16-976.mckenzie. order msj